*392 OPINION OF THE COURT
Bertram R. Gelfand, J.
This is a proceeding for leave to compromise a cause of action for wrongful death and to judicially account for the proceeds therefor. Decedent died on October 9, 1978 at the age of 38, survived by a daughter who is presently 16 years of age. Petitioner who is the decedent’s mother has been appointed guardian of the infant’s property. The proposed settlement offer, although obtained at the claim stage, is in the sum of $10,000 which is the maximum obtainable under the limitations of the defendant’s insurance policy. There apparently are no other available assets against which a judgment could be collected. Accordingly, the application for leave to compromise the cause of action for wrongful death is granted.
Petitioner additionally seeks a determination that the infant distributee’s putative father is not entitled to share in the settlement proceeds. This respondent was personally served with a citation clearly setting forth that it is requested that he be barred from sharing in the proceeds of the recovery by dint of his abandonment of decedent. It is not necessary to here reach the specific question of whether the infant distributee’s putative father by the mere relationship of having had a nonmarital child with decedent could under any circumstances have a possible interest in a recovery for decedent’s wrongful death. It is sufficient that the putative father of the distributee was directed to show cause why he should not be excluded from sharing in the recovery. He has defaulted. The relief requested on this subject is accordingly granted.
Upon the initial application it was requested that in addition to counsel fees being fixed in accordance with counsel’s one-third retainer with reference to the wrongful death settlement, the retainer also should be applied to an additional $2,000 obtained pursuant to a contractual no-fault death benefit. The attorney for the petitioner thereafter modified his request to only quantum meruit payment for his efforts relative to the no-fault payment. Viewing the facts relative to the no-fault payment as presented by the attorney for the petitioner, in the light most favorable to him, there is presented the question of whether as a matter of law he may be compensated from the no-fault payment for his efforts in collecting it.
The supplemental affidavit submitted by the attorney in support of his request does not claim that it was necessary for *393 him to be retained, or was he retained, in any type of arbitration or litigation to recover no-fault benefits, nor do the facts stated establish that the claim fell into the category of an "overdue claim” as "overdue” is defined in subdivision 1 of section 675 of the Insurance Law. Critical to the matter falling into this category is that all the requisite documentation to sustain the claim was submitted to the carrier and he did not pay said claim within 30 days. This has not been established in this matter. No application was ever made to the insurer seeking counsel fees for his services with regard to such no-fault benefits. Even after counsel had clarified his efforts by a supplemental affidavit, the substance of what has been established is that at a time that the insurer had not yet paid the contractual no-fault benefit, and while discussing settlement of the wrongful death action, counsel had sought payment of this sum in telephone conversations. It is further alleged that ultimately he threatened that he would not settle the wrongful death action unless the contractual no-fault payment of $2,000 was also paid. The impact of this threat does not appear to be of great significance when the settlement offer is for the full policy. Counsel has received a check for said $2,000 payment which he retains uncashed subject to all issues relative thereto being determined by this court.
Counsel is to be commended for orally urging the insurance carrier to make payment of the no-fault death benefit due under section 672 (subd 1, par [c]) of the Insurance Law as a concomitant of his efforts to settle the wrongful death action. However, it cannot be concluded that his efforts can be compensated from the no-fault benefit recovered.
The primary purpose of the no-fault legislation was to afford rapid payment of benefits without regard to fault (see Marc-Charles v Krug, 93 Misc 2d 603; Agnostakios v Laureano, 85 Misc 2d 203), and without the necessity of the claimant retaining counsel. In enacting no-fault, the Legislature specifically provided that if legal services were required to obtain the payment of an overdue no-fault benefit that the value of such legal services was a charge against the insurance carrier, and not against the beneficiary (Insurance Law, § 675, subd 1). Implicit in the total no-fault scheme of insurance is the award of payment to beneficiaries without expense to them. This is clearly evidenced by the provision for the insurer to pay counsel fees where a claim reaches the point of dispute that requires the claimant to seek legal representation to establish *394 the claim (Insurance Law, § 675, subd 1). In fact, to insure that claimants will not have difficulty in retaining counsel to collect disputed no-fault claims that are relatively small, it has been held that the fee for claimant’s counsel which may be awarded against the insurer for the successful arbitration of a no-fault claim is not limited by the amount in controversy (Matter of Country-Wide Ins. Co. [Barrios], 54 AD2d 879, affd 43 NY2d 685). It accordingly was incumbent upon counsel, if he felt entitled to payment, pursuant to the statute, to seek such compensation from the carrier, and not his client. Having omitted to make such claim against the carrier, no basis appears for imposing a charge against his client for the mere collection of what appears to have been an undisputed claim. Accordingly, it is determined that the $2,000 no-fault payment is the property of the infant beneficiary and is payable to her in its totality. It is further noted that if the no-fault payment was in fact "overdue” that it was subject to interest of 2% per month which it does not appear was paid (Insurance Law, § 675, subd 1).
Counsel fees and disbursements are otherwise fixed and allowed in the sum requested. The petitioner shall be reimbursed in the sum of $1,434 for expenses incurred for decedent’s funeral and for the erection of a monument. In this case payment of this sum from the recovery rather than the no-fault payment against which it is chargeable has no impact on the net sum which the sole distributee will receive. In addition to the no-fault recovery, the net distributable sum remaining shall be paid to the petitioner as guardian of the property of the infant distributee jointly with the guardian clerk of this court.